ROBERTSON, Justice,
for the Court:
At the heart of this case is the question whether a June 20, 1951, instrument labeled “Warranty Deed” is void in law as an attempted testamentary disposition for its failure to comply with our statute of wills. The operative language is as follows:
In consideration of ... we, the undersigned J.O. HEGWOOD and wife, NANNIE MAY HEGWOOD, do hereby sell, convey and warrant to our son, CARROLL DENNIS HEGWOOD, and HIS OWN BLOOD HEIRS, at OUR DEATH, the following described land in Lamar County, Mississippi, to-wit: [Description of Property]
Our law is well settled in two complementary lines of cases. Where an instrument, though in the form of a deed, contains its maker’s provision that it makes no present conveyance of an interest in land or otherwise directs that the interest to be conveyed vests in the grantee only upon the death of the grantor, such an instrument is regarded as testamentary in character and is enforceable only if made in compliance with our statute of wills. Tapley v. McManus, 175 Miss. 849, 854-55, 168 So. 51, 52 (1936); see also, Peebles v. Rodgers, 211 Miss. 8, 50 So.2d 632 (1951); Palmer v. Riggs, 197 Miss. 256, 19 So.2d 807 (1944); Gaston v. Mitchell, 192 Miss. 452, 4 So.2d 892 (1942); Ates v. Ates, 189 Miss. 226, 196 So. 243 (1940); Smith v. Buffington, 176 Miss. 889, 170 So. 816 (1936); White v. Inman, 212 Miss. 237, 54 So.2d 375 (1951); and other cases to like effect. See Miss. Code Ann. § 91-5-1 (1972) (requiring, inter alia, signatures of two witnesses before instrument valid and enforceable as a will).
Conversely, where the instrument conveys a future interest in land which v'ests in the grantee effective upon delivery of the deed, though reserving in the grantor a life estate, the effect of which is to postpone only the grantee’s right of possession or occupancy, the instrument is a deed in law subject to our law appertaining thereto and may be effective notwithstanding failure to comply with the statute of wills. Buchanan v. Buchanan, 236 Miss. 751, 756-57, 112 So.2d 224, 226-27 (1959); Tanner v. Foreman, 212 Miss. 355, 54 So.2d 483 (1951); see also, Watts v. Watts, 198 Miss. 246, 22 So.2d 625 (1945); Graham v. Triplett, 148 Miss. 299, 114 So. 621 (1927); Johnson v. Seely, 136 Miss. 60, 103 So. 499 (1925); Stubblefield v. Haywood, 123 Miss. 480, 86 So. 295 (1920); Wall v. Wall, 30 Miss. 91, 96-100, 64 Am.Dec. 147 (1855). See also Miss. Code Ann. § 89-1-1 (1972) (authorizing conveyance of future interest).
*1046 The rules of law emanating from these cases being clear, no useful purpose would be served by a detailed consideration of same. Suffice it to say that we have reviewed the language of the instrument under construction in each such case. Without exception, we find the language of the instruments involved in the Tapley v. Mc-Manus line of cases establishing the testamentary character of the instrument more definitely than may be said of the instrument at bar. Conversely, the instruments involved in the Buchanan line of cases each establishes the present conveyance and vesting of a future interest, subject only to the grantor’s life estate, more clearly than is the case with the instrument at bar. Our decision today must of necessity expand the rule of one line an inch or two toward the other.
We make today’s decision against the backdrop of one of the grand purposes of our law: to enable persons to achieve legitimate ends which without law would be impossible of achievement. Our law facilitates the realization of dreams, modest or grand, private or charitable. In this regard law vests certain powers in each of us. We are given to believe that, without further authorization, we may with effect exercise those powers, so long as we conform to certain general enabling rules.[1]
When doubtful cases arise it is incumbent upon us that we build our adjudication upon the cornerstone of this grand purpose of our law. Where as here individuals seek to accomplish ends authorized by our law, we are obliged to take upon ourselves a positive attitude that the law may serve, not thwart, the legitimate aspirations of those individuals. Put otherwise, the rules of strict construction sometimes applied when enforcement of penal rules is at issue give way in the present context to an appropriate degree of liberality.
One end our ancestors thought a necessary incident of freedom, and for which they long fought, was the right to own property and necessarily the right to dispose of one’s property as one sees fit. Our law today empowers persons to accomplish these ends — to be sure, with notable restrictions, none of which affect today’s adjudication.
This day our specific attention is focused upon J.O. and Nannie Mae Hegwood. In June of 1951 the Hegwoods were among those whom our law empowered to dispose as they saw fit of real property owned by them. On the twentieth day of that month, they executed and delivered the instrument here in controversy. Our concern is not with whether, according to abstract notions of justice, plaintiffs or defendants should get the land but that we give proper effect to the private directive arrangement J.O. and Nannie Mae Hegwood indisputably had power to make. We necessarily begin that effort by searching out the Hegwoods’ intent.
There is much to be said for the proposition that in the construction of written instruments courts should be concerned with what parties said rather than with what they intended — for what they said is capable of ascertainment with far less opportunity for mischief. This premise does not negate our seeking the Hegwoods’ intent on the premise that the words they have employed are the most reliable guide to that intent.
Here the words used leave no reasonable doubt but that J.O. Hegwood and Nannie Mae Hegwood intended to convey the land as of June 20, 1951, so that there would be no question of its ownership at their death. Lawyers may find interesting the subtle distinction between a conveyance in the present of a future interest with a life estate reserved, on the one hand, and, on the other, a conveyance to vest at death and irrevocable only at death — and, as noted above, our law recognizes it. We are confident that laymen would neither understand such a distinction, much less have it in mind at the time of the drafting of an *1047 instrument such as that in question. Doubtful cases will not turn on such subtleties.
The words of the instrument communicate to the reader a dominant intention on the part of the Hegwoods that at their death their property belong to their son and his heirs. This dominant intention being one accomplishment of which our law allows through the facility of a deed of conveyance, we have no reasonable alternative but to enforce it.[2] Cf. In Re Estate of Roxie Bunch, 485 So.2d 284, 287 (Miss.1986).
We do not discard the Tapley line of cases nor lightly distinguish it. We reiterate that in each of those cases the instrument contained testamentary language far more specific than that here. The object of persons such as the Hegwoods being one which our law allows to be accomplished, we regard it as a sound rule of construction to resolve doubts in favor of treating the instrument as a deed rather than a will. Put otherwise, an instrument such as that under consideration here appearing in the form of a deed should be adjudicated testamentary in character and subject to the statute of wills only where such affirmatively and clearly appears from the language of the instrument. Buchanan v. Buchanan, 236 Miss. 751, 756-57, 112 So.2d 224, 227 (1959); 23 Am.Jur.2d Deeds, § 246 p. 241.
The point that the deed was not recorded until after the death of J.O. Heg-wood has been noted. In fact, it appears that the deed was executed June 20, 1951, that J.O. Hegwood died on August 17, 1962, that the deed was filed for record in the chancery clerk’s office on October 5, 1962, and that as of the time of the proceedings below Nannie Mae Hegwood continued to survive her late husband, J.O. Hegwood. That the instrument in question may not have been recorded until after the death of the grantor is of no consequence. Tanner v. Foreman, 212 Miss. 355, 54 So.2d 483 (1951).
Put formally, we hold that the instrument in question conveyed the premises to Carroll Dennis Hegwood[3] effective June 20, 1951, and that by such conveyance fee simple title to said premises became at that moment vested in the said Carroll Dennis Hegwood, subject only to a life estate in J.O. Hegwood and Nannie Mae Hegwood.
We are not unaware of the secondary position of each party to this proceeding that the Court declare the instrument ambiguous and authorize resort to extrinsic evidence to ascertain its intent and meaning. We decline the invitation. The instrument sufficiently reflects the intention and purpose of the grantors that we should adjudicate its meaning solely by reference to its language and the intentions and purposes there revealed.
AFFIRMED.
PATTERSON, C.J., WALKER, and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, SULLIVAN and ANDERSON, JJ., concur.

. See, e.g., In Re Estate of Roxie Bunch, 485 So.2d 284 (Miss.1986) wherein we recently vindicated the power of an elderly spinster to establish a charitable trust to aid medical students.

. As we all know the Hegwoods' direction that the property go to Carroll Dennis Hegwood’s “own blood heirs" contemplates a purpose long held illegal. If this wording is an attempt to create a fee tail, it runs afoul Miss. Code Ann. § 89-1-15 (1972). If it is an attempt to create a cotenancy, it fails because the living (Carroll Dennis Hegwood) have no heirs.

. See footnote 2, supra.