# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-00528-COA

**ESTATE OF ROSE GREER, DECEASED: JOHN OAKS A/K/A JOHN OAKES**          **APPELLANT**

**v.**

**LINDA GREER BALL**          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/20/2014 |
| TRIAL JUDGE: | HON. EDWARD E. PATTEN JR. |
| COURT FROM WHICH APPEALED: | LINCOLN COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | JOHN R. REEVES |
| ATTORNEYS FOR APPELLEE: | WILLIAM D. BOERNER |
| | JOE ROBERT NORTON IV |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| TRIAL COURT DISPOSITION: | FOUND ASSIGNMENT OF LEASE VALID |
| DISPOSITION: | REVERSED, RENDERED, AND REMANDED: 05/03/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., CARLTON AND JAMES, JJ.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1. John Oaks, as executor of the estate of Rose Greer, deceased, filed a declaratory-judgment action that contested a lease assignment that purported to convey Greer's lessor rights to Linda Greer Ball upon Greer's death. The chancellor ruled in favor of Ball and upheld the lease assignment. In this appeal, Oaks argues that the trial court erred when it found the lease assignment to be valid, and when it determined that Ball was not responsible for the payment of casualty-insurance premiums on the property. We find error and reverse, render, and remand for further proceedings.

# FACTS AND PROCEDURAL HISTORY

¶2.     On May 3, 2002, Greer executed a lease agreement with Jene and David Nunnery. The lease was for certain farmland located in Lincoln County, Mississippi. The Nunnerys agreed to pay Greer $600 per month. According to the lease, the term of the lease began on August 1, 2000, and was for a one-year initial term. The lease included automatic one-year renewals, with a final termination date of July 31, 2025.

¶3.     In controversy here is Section 3 of the lease agreement. It reads:

> DEATH:   In the event of the death of the Lessor, this lease agreement shall not terminate[;] rather the rights and obligations of Lessor shall immediately be transferred to Linda Ball, who will also have the right to receive payments hereunder.

¶4.     On July 31, 2009, Greer executed a will that left the remainder of her estate to Oaks. The will did not mention the lease assignment to Ball. Greer died on October 6, 2010. Oaks probated the will, and he was issued letters testamentary on October 26, 2010.

¶5.     On September 24, 2013, Oaks filed a complaint for declaratory relief against Ball. In the complaint, Oaks asked for a declaratory judgment that found Section 3 of the lease agreement to be invalid. Oaks claimed that the assignment was not valid because it was testamentary in nature and did not comply with the requirements of a testamentary document. As alternative relief, Oaks sought a declaratory judgment that, if the assignment was valid, Ball was responsible for the payment of ad valorem taxes and insurance premiums on the property.

¶6.     On February 20, 2014, the chancellor held a hearing. No testimonial evidence was received, and the parties stipulated the documentary evidence to include Greer's will and the

2

lease agreement. After argument of counsel, the learned chancellor ruled that Section 3 of the lease agreement was not testamentary and the provision properly conveyed Greer's lessor rights to Ball. The chancellor ruled that Ball was to pay the ad valorem taxes on the property, and denied Oaks's request that Ball pay the casualty-insurance premiums on the property.

## STANDARD OF REVIEW

¶7. An appellate court "applies a de novo standard of review to questions of law, including a motion for a declaratory judgment." *S. Carolina Ins. v. Keymon*, 974 So. 2d 226, 229 (¶9) (Miss. 2008) (citation omitted).

## ANALYSIS

¶8. Oaks makes a simple argument. He claims that Section 3 of the lease agreement constituted a testamentary conveyance. As a conveyance, the lease agreement was required to comply with the requirements of a testamentary document. Oaks contends the document did not comport with the testamentary requirements, which rendered the assignment invalid.

¶9. "A lease is both a contract and a conveyance." K.F. Boackle, *Mississippi Landlord and Tenant Law with Forms* § 1.2 (2005). As a contract, a lease is freely assignable unless a provision in the lease expressly states the contrary. *See* Jeffery Jackson & Mary Miller, *Encyclopedia of Mississippi Law* § 21:33 (2015).

¶10. During her life, Greer was the fee-simple owner of the property and had the right to lease it to the Nunnerys. Greer was entitled to the rental proceeds and could have assigned the proceeds to a third party if she wanted. The concern here, however, is that the assignment was only effective upon Greer's death. This Court is presented with a matter of

3

law and must decide whether the chancellor was correct to decide that the lease-agreement provision constituted a valid assignment and not a testamentary conveyance.

¶11.    Section 3 of the lease agreement assigns the lessor's rights to Ball upon Greer's death. In *Buchanan v. Buchanan*, 236 Miss. 751, 756, 112 So. 2d 224, 227 (1959), the Mississippi Supreme Court held:

> [W]hen an instrument purports to be a deed and is in the words and form of a deed and is acknowledged as such, it should be construed to be testamentary in character and inoperative as a deed of conveyance when, and only when, it affirmatively and clearly appears from the language of the instrument itself, giving due consideration to all its provisions, that it was the intention of the person signing it that the instrument itself would have no effect until his death.

The supreme court further held:

> Where an instrument, though in the form of a deed, contains its maker's provision that it makes no present conveyance of an interest in land or otherwise directs that the interest to be conveyed vests in the grantee only upon the death of the grantor, such an instrument is regarded as testamentary in character and is enforceable only if made in compliance with our statute of wills.

*Ford v. Hegwood*, 485 So. 2d 1044, 1045 (Miss. 1986).

¶12.    In *Ford*, the owners of a parcel of real property created a warranty deed that included the following provision: "[W]e, the undersigned J.O. HEGWOOD and wife, NANNIE MAY HEGWOOD, do hereby sell, convey[,] and warrant to our son, CARROLL DENNIS HEGWOOD, and HIS OWN BLOOD HEIRS, at OUR DEATH, the following described land[.]" *Id.*  The supreme court ruled that the deed, dated June 20, 1951, conveyed the property to Carroll as of the date of the deed and left J.O. and Nannie May a life estate in the property.  *Id.* at 1046.  Under this interpretation, the supreme court concluded that the

4

language did not indicate a testamentary intent by the Hegwoods, but rather demonstrated an immediate conveyance. *Id.* at 1047.

¶13. In both *Buchanan* and *Ford*, the courts upheld warranty deeds that purported to convey land only upon the deaths of the grantors by finding that the grantors retained life estates while contemporaneously conveying the land to the grantees. In contrast, this case implicates a lease agreement rather than a warranty deed. There is no analogous Mississippi case examining the validity of such an assignment in a lease agreement. Thus, this Court looks to the *Buchanan* and *Ford* decisions for guidance.

¶14. Both the *Buchanan* and *Ford* courts determined that the warranty-deed conveyances in each respective case illustrated the intent of the landowners to presently convey the land as of the execution of the warranty deeds, leaving a life estate to the themselves. Under this reasoning, the logical inference is that both the grantor and the grantee possess simultaneous, but distinct, interests. The key distinction between the warranty deeds in *Buchanan* and *Ford* and the lease agreement here, however, is that Ball and Greer could not contemporaneously possess the same rights afforded under the lease agreement.

¶15. During her life, Greer was the fee-simple owner of the property, and the lessor by virtue of the lease agreement. While Greer was alive, Ball had absolutely no interest in the property or the lease agreement whatsoever. Ball's interest in the lease agreement was conditioned upon Greer's death. Following the framework illustrated in *Buchanan* and *Ford*, this clearly indicated Greer's intent that the assignment "would have no effect until [her] death." *Buchanan*, 236 Miss. at 756, 112 So. 2d at 227. Therefore, we conclude that Section

5

3 of the lease agreement acted as a testamentary document and failed to validly assign Greer's lessor rights to Ball unless it complied with the necessary testamentary requirements. Accordingly, this Court must determine whether the document was a valid testamentary instrument.

¶16.    Mississippi law provides that "[e]very person eighteen (18) years of age or older, being of sound and disposing mind, shall have power, by last will and testament, or codicil in writing, to devise all the estate, right, title and interest in possession, reversion, or remainder[.]" While Greer objectively met the age requirement, there was no indication of whether Greer was of "sound and disposing mind" or that the document represented a will.

¶17.    Further, for a valid testamentary instrument, the document must "be signed by the testator or testatrix, or by some other person in his or her presence and by his or her express direction. Moreover, if not wholly written and subscribed by himself or herself, it shall be attested by two (2) or more credible witnesses" in her presence. Miss. Code Ann. § 91-5-1 (Rev. 2013). Both Greer and the Nunnerys signed the lease agreement, arguably meeting the statutory guidelines. But for the instrument to be a valid will, the Nunnerys must meet the requirements of attesting witnesses:

> First, the testator must request them to attest the will; second, they must see the testator sign the will; third, they must know that the document is the testator's last will and testament; and finally, they must satisfy themselves that the testator is of sound and disposing mind and capable of making a will.

*In re Estate of Holmes*, 101 So. 3d 1150, 1152 (¶10) (Miss. 2012). There is no indication in the record that the Nunnerys met any of these requirements. As such, we conclude as a matter of law that the lease agreement did not constitute a valid will.

6

¶18. For these reasons, we reverse the chancellor's judgment and render a judgment that Section 3 was testamentary in nature and the lease agreement failed to meet the statutory requirements for a valid will. Therefore, Greer did not properly convey her lessor rights to Ball. Because the assignment is invalid, the question of whether Ball must maintain insurance on the property is moot. We remand this case for the chancellor to determine whether the estate was entitled to repayment of the lease proceeds from Ball and for further proceedings consistent with this opinion.

¶19. **THE JUDGMENT OF THE LINCOLN COUNTY CHANCERY COURT IS REVERSED, RENDERED, AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.**

**BARNES, ISHEE, CARLTON AND JAMES, JJ., CONCUR. WILSON, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY LEE, C.J., IRVING, P.J., AND FAIR, J. GREENLEE, J., NOT PARTICIPATING.**

**WILSON, J., DISSENTING:**

¶20. I am persuaded that the unusual provision in the lease between Rose Greer and the Nunnerys is enforceable under *Ford v. Hegwood*, 485 So. 2d 1044 (Miss. 1986). Therefore, I respectfully dissent.

¶21. As the plurality explains, *Ford* did not involve a lease. It involved a "Warranty Deed" by which a husband and wife attempted to "sell, convey, and warrant" land to their son "at OUR DEATH," i.e., at the death of the husband and wife. *Id.* at 1045. *Ford* addressed the question whether such an instrument, though in the form of a deed, must be treated as testamentary. The opinion describes "two complementary lines of cases" on the subject. *Id.* One line of cases, exemplified by *Tapley v. McManus*, 175 Miss. 849, 854-55, 168 So. 51,

7

52 (1936), holds that when an instrument "makes no present conveyance of an interest in land or otherwise directs that the interest to be conveyed vests in the grantee only upon the death of the grantor, [it] is regarded as testamentary in character and is enforceable only if made in compliance with our statute of wills." *Ford*, 485 So. 2d at 1045. The other line of cases stands for the proposition that if a deed "conveys a future interest in land which vests in the grantee effective upon delivery . . . , though reserving in the grantor a life estate, the effect of which is to postpone only the grantee's right of possession or occupancy," it will be treated as a deed and enforced even if it does not comply with the statute of wills. *Id.* (citations omitted) (citing *Buchanan v. Buchanan*, 236 Miss. 751, 756-57, 112 So. 2d 224, 226-27 (1959)). The Court thought that "rules of law emanating from these cases [were] clear, [so] no useful purpose would be served by a detailed consideration of same." *Id.* at 1046. Instead, the Court simply reported that it had "reviewed the language of the instrument under construction in each such case" (a total of fourteen were cited) and that the instrument in *Ford* fell somewhere between the two lines. *Id.* Thus, the Court's decision would "of necessity expand the rule of one line an inch or two toward the other." *Id. Ford* has not been cited on this issue in the thirty years since, so presumably the two lines remain wherever *Ford* left them.

¶22. The Court explained that a decision regarding which line of cases to expand had to be made

> ... against the backdrop of one of the grand purposes of our law: to enable persons to achieve legitimate ends which without law would be impossible of achievement. Our law facilitates the realization of dreams, modest or grand, private or charitable. In this regard law vests certain powers in each of us. We

are given to believe that, without further authorization, we may with effect exercise those powers, so long as we conform to certain general enabling rules.

When doubtful cases arise it is incumbent upon us that we build our adjudication upon the cornerstone of this grand purpose of our law. Where as here individuals seek to accomplish ends authorized by our law, we are obliged to take upon ourselves a positive attitude that the law may serve, not thwart, the legitimate aspirations of those individuals. Put otherwise, the rules of strict construction sometimes applied when enforcement of penal rules is at issue give way in the present context to an appropriate degree of liberality.

One end our ancestors thought a necessary incident of freedom, and for which they long fought, was the right to own property and necessarily the right to dispose of one's property as one sees fit. Our law today empowers persons to accomplish these ends—to be sure, with notable restrictions, none of which affect today's adjudication.

*Id.* Thus, if possible, we should uphold an instrument by which an individual attempted to dispose of her property as she sees fit. To that end, we must construe such an instrument with "an appropriate degree of liberality" in a way that renders it valid rather than invalid, and we must resolve "doubtful cases" in favor of finding the instrument valid.

¶23. Applying these principles, the Court upheld and enforced the warranty deed at issue in that case. The Court reasoned,

The words of the instrument communicate to the reader a dominant intention on the part of the Hegwoods that at their death their property belong to their son and his heirs. This dominant intention being one accomplishment of which our law allows through the facility of a deed of conveyance, we have no reasonable alternative but to enforce it.

*Id.* at 1047. The first sentence simply stated the obvious. The Hegwoods' intent was clear. The question was whether the instrument expressing their intent was invalid because it did not comply with the statute of wills, as is generally required when a person wants to convey property to another at his or her death. On that issue, the Court seemed to say that because

"our law allows" such a transaction to be accomplished through a deed with a reservation of a life estate, the Court was compelled to construe the deed in that way and enforce it. *See id.* Thus, the Court interpreted the deed as conveying "fee simple title" upon execution "subject only to a life estate." *Id.* The Court did so even though the plain language of the deed, which was recorded only after Mr. Hegwood died eleven years later, stated that the conveyance would occur only at the Hegwoods' death. *See id.* at 1045, 1047.

¶24. The Court summarized the overarching rule on this issue as follows:

> [W]e regard it as a sound rule of construction to resolve doubts in favor of treating the instrument as a deed rather than a will. Put otherwise, an instrument such as that under consideration here appearing in the form of a deed should be adjudicated testamentary in character and subject to the statute of wills *only where such affirmatively and clearly appears from the language of the instrument*.

*Id.* at 1047 (emphasis added). *Buchanan*, *supra*, had similarly stated:

> [W]hen an instrument purports to be a deed and is in the words and form of a deed and is acknowledged as such, it should be construed to be testamentary in character and inoperative as a deed of conveyance *when, and only when, it affirmatively and clearly appears from the language of the instrument itself, giving due consideration to all its provisions, that it was the intention of the person signing it that the instrument itself would have no effect until his death*.

*Buchanan*, 236 Miss. at 756, 112 So. 2d at 227 (emphasis added).

¶25. This case involves a lease, not a deed. And while *Ford* is the closest precedent, the fact that the case involves a lease is relevant to our analysis. To begin with, it is undisputed that "the instrument itself"—the lease—was intended to and did take effect when it was executed. Thus, if the relevant "instrument" is the lease, this point alone seems to be a sufficient reason not to regard the challenged provision as testamentary.

10

¶26. But even if our analysis must focus on the specific language that Oaks challenges, it should be enforced as written. It is important to keep in mind that the language at issue is only part of one section of a twenty-five year lease agreement between the Nunnerys and Greer. The Nunnerys agreed to this language and, for all we know, may have requested it or even insisted on it. Particularly given the length of the lease and the Nunnerys' use of the property to operate their dairy business, the Nunnerys may have assigned some value to a contractual right to deal with a specifically identified person—rather than some unknown heir or heirs—in the event of Greer's death.[1] Indeed, this lawsuit seems to illustrate the potential value of the provision to the Nunnerys. Oaks sued both Ball and the Nunnerys and sought a declaration that the entire lease had terminated. Specifically, Oaks asked the Court to declare that Section 3 was invalid in its entirety and, therefore, that the lease terminated on Greer's death. The Nunnerys filed a counterclaim, and the Nunnerys and Oaks eventually agreed to dismiss their claims against one another based on a stipulation, signed by counsel on behalf of all parties, "that the lease at issue in this litigation is valid, binding, and enforceable."[2]

¶27. Regardless of why this language was inserted in the lease agreement, the larger point is that it was part of a valid agreement between Greer *and the Nunnerys*. Therefore, Greer could not have revoked the language unilaterally or without the Nunnerys' consent. For this

---

[1] Under the lease, the lessor is obligated to pay taxes on the property. The lease also provides that the Nunnerys must seek the lessor's preapproval of "any significant variation from the [property's] intended use" as a dairy business.

[2] Ball has not argued on appeal that Oaks stipulated to the validity of the assignment.

reason, I am unable to say that it "affirmatively and clearly appears from the language of the instrument itself, giving due consideration to all its provisions, that it was the intention of the person[s] signing it that the instrument itself would have *no effect* until [Greer's] death." *Buchanan*, 236 Miss. at 756, 112 So. 2d at 227 (emphasis added). The Nunnerys had an immediate right to insist that this agreed-upon provision remain a part of their lease agreement without change.

¶28. I read *Ford* to say that we should refuse to enforce a voluntary assignment of property rights only if it "affirmatively and clearly appears from the language of the instrument" that it was intended only as a testamentary gift and served no other purpose. *Ford*, 485 So. 2d at 1047. This does not describe the assignment in this case, which directly affects other parties (the Nunnerys) and requires Ball to pay property taxes in addition to receiving rental payments. Based on *Ford*'s instruction that even "doubtful cases" should be resolved in favor of finding the instrument valid, I conclude that the challenged language is simply one part of a valid lease, not an invalid testamentary gift hidden in a lease.

¶29. Although certain language in *Ford* and *Buchanan* can be read to support the plurality opinion, I am persuaded that the lease provision at issue in this case is enforceable under the principles articulated and applied in those decisions. Accordingly, I respectfully dissent.

**LEE, C.J., IRVING, P.J., AND FAIR, J., JOIN THIS OPINION.**