# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CA-00823-COA

IN THE MATTER OF THE ESTATE OF GARY WAYNE JOHNSON, DECEASED: ZOA ANN MANNERS

**APPELLANT**

v.

THE ESTATE OF GARY WAYNE JOHNSON, BRIAN JOHNSON, RICHARD WAYNE JOHNSON AND STEVEN HOWARD JOHNSON

**APPELLEES**

| | |
|---|---|
| DATE OF JUDGMENT: | 07/25/2023 |
| TRIAL JUDGE: | HON. LAWRENCE LEE LITTLE |
| COURT FROM WHICH APPEALED: | MARSHALL COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | JERRY WESLEY HISAW |
| ATTORNEY FOR APPELLEES: | WILLIAM F. SCHNELLER JR. |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | REVERSED AND REMANDED - 08/13/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., McCARTY AND EMFINGER, JJ.**

**WILSON, P.J., FOR THE COURT:**

¶1.     Gary Wayne Johnson drafted an "Article of Agreement" with the apparent intent to convey an interest in specifically described real property to his three sisters. Gary signed the document in the presence of a notary public and his sister Zoa Ann Manners and gave the document to Zoa Ann. Years later, after Gary died, Zoa Ann filed a claim against Gary's estate to enforce her rights under the document. The chancellor denied Zoa Ann's claim, and she appealed. We conclude that the Article of Agreement conveyed an interest in the subject land to Zoa Ann and her sisters, and we reverse and remand the case for necessary parties to

be joined and for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

¶2.     Shirley and Richard Flor were married and had four children—Gary, Zoa Ann, Geraldine DeBore, and Valerie Jean Atkins.  In June 1996, Shirley and Richard executed essentially identical wills.  Richard's will left all his property to Shirley, and Shirley's will left all her property to Richard.  Shirley's will provided that if Richard predeceased her, her executor should "divide [her] property equally among [her four] children, with the . . . exception[] [t]hat Geraldine . . . [should] receive an amount equal to $10,000.00 less than [her three siblings] due to the fact that she received [that] amount from [Shirley and Richard] during their lifetime."  Richard's will included an identical provision applicable if Shirley predeceased him.

¶3.     Richard died on August 9, 1996.  On August 22, 1996, Shirley executed a warranty deed conveying to Gary the following land in Marshall County:

> Lots No. 11, 12, and 13 of Lenzi Farms Subdivision of Section 22, Township 2 South, Range 5 West, according to plat of said subdivision recorded in Plat File No. 678B of the records of the Clerk of the Chancery Court of Marshall County, MS.

The record does not show the exact date of Shirley's death, but there was testimony that she died in 1996 about five weeks after Richard.

¶4.     In December 2002, Gary signed an "Article Of Agreement" that stated as follows:

## Article Of Agreement

On August 22, 1986[1] my mother Shirley R Flor
executed a warranty deed with her son Gary W Johnson
transferring the following property.

Lots No. 11, 12, 13 of Lenzi Farms Subdivision of section 22,
township 2 south 6 west, according to plot of said subdivision
recorded In plot no. 678b of the records of the chancery court of
Marshall County, MS

All three lots are under separate warranty deeds and I, Gary W Johnson
have paid the monthly payments and yearly taxes to date.
Lot no. 11 is solely my personal property and upon sale benefits
myself alone or in the case of my death my estate.

Lots no 12, 13 Although in my name was not and is not for my benefit alone
Upon sale or my death shall be shared in accordance with my father
Richard S Flor and mother Shirley R Flor's last will and testament

The shared parties are as follows:
Gary W Johnson
Zoa Ann Manners
Valerie J Akins
Geraldine Deboar

The Article of Agreement was signed by Gary and notarized.

¶5.    In October 2021, Gary died intestate.  In August 2022, Zoa Ann filed a petition to open Gary's estate, to appoint an administrator, and for other relief.  The petition alleged that Gary was "contractually obligated" to transfer Lots 12 and 13 to his three sisters.  Gary's three sons—Richard, Brian, and Steven—were served with process.  The chancellor entered an order appointing Richard as the administrator of his father's estate.  The order stated that Gary's widow, Teresa Perry Johnson, and three sons were his sole heirs at law.

¶6.    On September 27, 2022, Zoa Ann filed a claim against the estate for a "1/4

---

[1] This date is incorrect.  The warranty deed was dated August 22, 1996, and recorded on August 23, 1996.

ownership" of Lots 12 and 13.

¶7.     On September 30, 2022, Richard filed a Complaint for Determination of Heirs that identified himself, his two brothers, and Teresa as the plaintiffs and Gary's sole heirs at law. The complaint alleged that title to Lots 11, 12, and 13 "vested indefeasibly in" the four plaintiffs upon Gary's death.

¶8.     Just five days later, Richard filed an Amended Complaint for Determination of Heirs that identified only himself and his two brothers as the plaintiffs and Gary's sole heirs at law. The amended complaint alleged that title to Lots 11, 12, and 13 "vested indefeasibly in" Gary's three sons upon Gary's death.  The amended complaint did not mention Teresa.  Nor was Teresa mentioned in any subsequent pleading or motion, during the hearing in the chancery court, or in any of the briefs on appeal.  In addition, there is no indication that she was ever served with process or otherwise made a party to the case.

¶9.     Richard's two brothers subsequently waived service of process by filing joinders "in the *Complaint for Determination of Heirs* filed . . . by Richard."

¶10.    The chancery court held a hearing in July 2023.  Zoa Ann was the only witness.  She testified that "on [Shirley's] death bed about two or three weeks before she passed away, Gary brought the land people in and [Shirley] signed the documents," i.e., the warranty deed from Shirley to Gary.  According to Zoa Ann, "Gary . . . said that he wasn't trying to take anything away from us.  He was just trying to protect the land.  So he made this contract with [Zoa Ann and her sisters]," i.e., the "Article of Agreement."  Zoa Ann stated, "[Gary] said he did it to protect the land.  He thought the land would be taken away . . . . Lindsey [was the

4

owner] of the property. And because it wasn't fully paid, [Gary] thought Lindsey might take the property." The record does not identify "Lindsey," explain what interest Lindsey had in the property, or reveal whether or how Lindsey's interest was extinguished.

¶11. Zoa Ann testified that she witnessed Gary sign the Article of Agreement at a bank in the presence of a notary public and that Gary then gave her the document to keep. According to Zoa Ann, Gary's children "knew their whole life that Gary wanted us to have our part of the inheritance." Zoa Ann testified that Gary's estate should also receive a one-quarter interest in the property, as provided in her parents' wills. She also stated that she and her sister "Valerie paid the property [taxes] for two years before [Gary] moved there" and that she (Zoa Ann) had "got[ten] the property out of foreclosure twice" by paying $2,500 and $1,900. Zoa Ann maintained that Gary's "intentions [were] clear" and that "he want[ed] to honor his parents and . . . his sisters."

¶12. At the conclusion of the hearing, the chancellor ruled from the bench and denied Zoa Ann's claim. The chancellor stated that the Article of Agreement was not "a sufficient foundation for the basis of a claim against the estate." He found that the document was, "at best, some kind of attempt to discuss the[] three lots, but [did] not have sufficient clarity, even with the assistance of testimony, to convey a present interest in the land, as if it were a deed." He also found that the document was, "as a contract, ambiguous." He stated that the document was not "proven to the extent required by law to be either a deed or a contract with sufficient clarity to convey a present interest." Following the hearing, the chancellor entered a one-page order denying Zoa Ann's claim "for the reasons articulated in [his] oral

5

ruling." Zoa Ann then filed a notice of appeal.

**ANALYSIS**

¶13.   "[W]e will not disturb the factual findings of a chancellor when supported by substantial evidence unless the Court can say with reasonable certainty that the chancellor abused his discretion, was manifestly wrong, clearly erroneous or applied an erroneous legal standard." *Briggs v. Hughes*, 316 So. 3d 193, 198 (¶20) (Miss. 2021) (quotation marks omitted).  We review questions of law de novo.  *Id.* at 196 (¶10).

¶14.   On appeal, Zoa Ann argues that the Article of Agreement is enforceable because it conveyed a vested interest in the land.  In response, Gary's estate contends that the document is unenforceable because it conveyed no vested interest, was testamentary in nature at best, and was really "nothing more than a statement of intention by [Gary]."

¶15.   "Where an instrument, though in the form of a deed, contains its maker's provision that it makes no present conveyance of an interest in land or otherwise directs that the interest to be conveyed vests in the grantee only upon the death of the grantor, such an instrument is regarded as testamentary in character and is enforceable only if made in compliance with our statute of wills." *Ford v. Hegwood*, 485 So. 2d 1044, 1045 (Miss. 1986).  "Conversely, where the instrument conveys a future interest in land which vests in the grantee effective upon delivery of the deed, though reserving in the grantor a life estate, the effect of which is to postpone only the grantee's right of possession or occupancy, the instrument is a deed in law subject to our law appertaining thereto and may be effective notwithstanding failure to comply with the statute of wills." *Id.*

6

¶16.    In *Ford*, a wife and husband (the Hegwoods) signed a "Warranty Deed" on June 20, 1951, that stated in part, "[W]e . . . do hereby sell, convey and warrant to our son, . . . *at OUR DEATH*, the following described land . . . ."  *Id.* (emphasis added).  The question presented was whether the document was a testamentary gift that failed to comply with our statute of wills or a valid conveyance of a future interest that vested upon delivery.  *Id.*  In addressing this question, the Supreme Court emphasized,

> We make today's decision against the backdrop of one of the grand purposes of our law: to enable persons to achieve legitimate ends which without law would be impossible of achievement.  Our law facilitates the realization of dreams, modest or grand, private or charitable.  In this regard law vests certain powers in each of us.  We are given to believe that, without further authorization, we may with effect exercise those powers, so long as we conform to certain general enabling rules.
>
> When doubtful cases arise it is incumbent upon us that we build our adjudication upon the cornerstone of this grand purpose of our law.  Where as here individuals seek to accomplish ends authorized by our law, we are obliged to take upon ourselves a positive attitude that the law may serve, not thwart, the legitimate aspirations of those individuals.  Put otherwise, the rules of strict construction sometimes applied when enforcement of penal rules is at issue give way in the present context to an appropriate degree of liberality.
>
> *One end our ancestors thought a necessary incident of freedom, and for which they long fought, was the right to own property and necessarily the right to dispose of one's property as one sees fit.  Our law today empowers persons to accomplish these ends—to be sure, with notable restrictions, none of which affect today's adjudication.*

*Id.* at 1046 (emphasis added).

¶17.    The Supreme Court then concluded that the document at issue was a valid present conveyance of a vested future interest, reasoning:

> Here the words used leave no reasonable doubt but that [the Hegwoods] intended to convey the land as of June 20, 1951, so that there would be no

7

question of its ownership at their death. Lawyers may find interesting the subtle distinction between a conveyance in the present of a future interest with a life estate reserved, on the one hand, and, on the other, a conveyance to vest at death and irrevocable only at death . . . .[2] We are confident that laymen would neither understand such a distinction, much less have it in mind at the time of the drafting of an instrument such as that in question. Doubtful cases will not turn on such subtleties.

The words of the instrument communicate to the reader a dominant intention on the part of the Hegwoods that at their death their property belong to their son . . . . This dominant intention being one accomplishment of which our law allows through the facility of a deed of conveyance, we have no reasonable alternative but to enforce it.

. . . The object of persons such as the Hegwoods being one which our law allows to be accomplished, we regard it as a sound rule of construction to resolve doubts in favor of treating the instrument as a deed rather than a will. Put otherwise, an instrument such as that under consideration here appearing in the form of a deed should be adjudicated testamentary in character and subject to the statute of wills only where such affirmatively and clearly appears from the language of the instrument.

*Id.* at 1046-47 (citation and footnote omitted).

¶18. Likewise, we think that the Article of Agreement that Gary drafted and signed communicates "a dominant intention" that his sisters would each receive a one-quarter interest in the property upon his death. Gary used mandatory language, stating that upon his death, the property "*shall* be shared [with his sisters] in accordance with" his parents' wills. (Emphasis added). Nothing in the document suggests that this apparent conveyance of a

---

2 We note that in 2020, the Legislature enacted the Mississippi Real Property Transfer-On-Death Act, which authorizes a "transfer-on-death deed" that conveys an interest in real property effective at the transferor's death. *See generally* 2020 Miss. Laws ch. 406, codified at Miss. Code Ann. §§ 91-27-1 to -37 (Rev. 2021). The Act does not apply to the Article of Agreement at issue in this case. *See* Miss. Code Ann. § 91-27-5 (stating that the Act applies only to transfer-on-death deeds executed and acknowledged on or after July 1, 2020, by a transferor who dies on or after July 1, 2020).

8

future interest in the land was not vested or could be later revoked by Gary. As the Supreme Court reasoned in *Ford*, we do not think that a lay person like Gary would have such a legal subtlety in mind when drafting this type of document. The law allowed Gary to convey a vested future interest to his sisters. Therefore, consistent with the Supreme Court's decision in *Ford*, we should construe the Article of Agreement as a valid conveyance of a vested future interest rather than as an ineffective testamentary gift.[3]

¶19. Because the chancellor erred by holding that the Article of Agreement was invalid and unenforceable, we reverse and remand the case for further proceedings consistent with this opinion. We note that in cases involving title to real property, "[a]ll persons holding either legal or equitable interest in the land must be made parties, as the judgment determining the title must be binding on all." James W. Shelson, *Mississippi Chancery Practice* § 44:6 (2023). Such persons should be joined as necessary parties pursuant to Mississippi Rule of Civil Procedure 19. *See, e.g.*, *Bd. of Educ. of Calhoun Cnty. v. Warner*, 853 So. 2d 1159, 1170 (¶¶37-38) (Miss. 2003); *Johnson v. Weston Lumber & Bldg. Supply Co.*, 566 So. 2d 466, 469 (Miss. 1990); *Aldridge v. Aldridge*, 527 So. 2d 96, 98 (Miss. 1988); *Ladner v. Quality Expl. Co.*, 505 So. 2d 288, 290 (Miss. 1987). Here, it appears that Teresa, Valerie, and Geraldine all may hold an interest in the subject property under the law of intestate

---

[3] The Article of Agreement was not recorded, but a conveyance of an interest in land is "valid and binding" "as between the parties and their heirs" notwithstanding a failure to record it. Miss. Code Ann. § 89-5-3 (Rev. 2021); *Est. of Green v. Cooley*, 306 So. 3d 665, 670 (¶10) (Miss. 2020). As noted above, Gary delivered the Article of Agreement to Zoa Ann. *See* Miss. Code Ann. § 89-1-3 (Rev. 2021) ("An estate . . . in lands shall not be conveyed from one to another unless the conveyance be declared by writing signed and delivered."); *Est. of Dykes v. Est. of Williams*, 864 So. 2d 926, 930 (¶10) (Miss. 2003) ("For a deed to be valid in Mississippi, the grantor must deliver it to the grantee.").

succession or the Article of Agreement, yet none of them has been made a party. On remand, they should be made parties pursuant to Rule 19.

## CONCLUSION

¶20.    We agree with Zoa Ann that the Article of Agreement was a valid conveyance of interest in the subject property. Therefore, we reverse the judgment of the chancery court and remand the case for further proceedings consistent with this opinion, including the joinder of necessary parties.

¶21.    **REVERSED AND REMANDED.**

**BARNES, C.J., CARLTON, P.J., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**