# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2023-CT-00823-SCT

*IN THE MATTER OF THE ESTATE OF GARY WAYNE JOHNSON, DECEASED: ZOA ANN MANNERS*

*v.*

*THE ESTATE OF GARY WAYNE JOHNSON, BRIAN JOHNSON, RICHARD WAYNE JOHNSON AND STEVEN HOWARD JOHNSON*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 07/25/2023 |
| TRIAL JUDGE: | HON. LAWRENCE LEE LITTLE |
| TRIAL COURT ATTORNEYS: | JERRY WESLEY HISAW |
| | WILLIAM F. SCHNELLER, JR. |
| COURT FROM WHICH APPEALED: | MARSHALL COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | JERRY WESLEY HISAW |
| ATTORNEY FOR APPELLEES: | WILLIAM F. SCHNELLER, JR. |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED, AND THE JUDGMENT OF THE CHANCERY COURT OF MARSHALL COUNTY IS REINSTATED AND AFFIRMED - 10/02/2025 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**BRANNING, JUSTICE, FOR THE COURT:**

¶1. Gary Wayne Johnson died intestate in October 2021. Following Gary's death, his sister Zoa Ann Manners opened his estate and filed a creditor's claim based on a document entitled "Article of Agreement." She claimed that this document created a contractual

obligation by Gary, and subsequently his estate, to distribute a one-fourth interest in certain real property to Zoa Ann and her sisters. The trial court denied her claim, finding that the Article of Agreement was not operative as a deed. Zoa Ann appealed. The Court of Appeals reversed the trial court's judgment, finding that the Article of Agreement did constitute a valid deed conveying an interest in Gary's property and remanded the case for further proceedings. Upon thorough review, we respectfully reverse the Court of Appeals' decision and reinstate and affirm the judgment of the trial court.

## FACTS AND PROCEDURAL HISTORY

¶2.     Richard and Shirley Flor had four children—Gary Wayne Johnson, Zoa Ann Manners, Geraldine DeBoar, and Valerie Jean Atkins. In June 1996, Richard and Shirley executed identical wills that left all property to the survivor of the two and then to their four children in equal shares at the last death.[1]

¶3.     On August 9, 1996, Richard died, leaving all his property to Shirley. On August 22, 1996, Shirley executed a warranty deed conveying Lots Number 11, 12, and 13 of Lenzi Farms Subdivision, Marshall County, Mississippi, to Gary. The record indicates that Shirley died shortly thereafter.

¶4.     In December of 2002, Gary prepared and signed the following document:

---

[1] Geraldine was to receive $10,000 less than her siblings because she received this amount during her parents' lifetime.

2

**Article of Agreement**

On August 22, 19[96[2]] my mother Shirley R Flor
executed a warranty deed with her son Gary W. Johnson
transfer[r]ing the following property[:]

Lots No. 11, 12, 13 of Lenzi Farms Subdivision of section 22,
township 2 south 5 west, according to the plot of said subdivision
recorded in plot no. 678b of the records of the chancery court of
Marshall County, MS

All three lots are under separate warranty deeds and I, Gary W Johnson
have paid the monthly payments and yearly taxes to date.
Lot no. 11 is solely my personal property and upon sale ben[e]fits
myself alone or in the case of my death my estate.

Lots no 12, 13 Although in my name was not and is not for my benefit alone
Upon sale or my death shall be shared in accordance with my father
Richard S Flor and mother Shirley R Flor's last will and testament

The shared parties are as follows:
Gary W Johnson
Zoa Ann Manners
Valerie J Akins
Geraldine Deboar

It is undisputed that Gary prepared and signed the Article of Agreement, which was also notarized but was not recorded. He simultaneously delivered the same to Zoa Ann.

¶5.     In October 2021, Gary died intestate. In August 2022, Zoa Ann filed a petition to open Gary's estate as a creditor pursuant to Mississippi Code Section 91-7-63 (Supp. 2024). Her petition alleged that Gary was "contractually obligated" to transfer Lots 12 and 13 to

---

[2] The Article of Agreement listed the date as August 22, 1986; however, the warranty deed was dated August 22, 1996, and was recorded on August 23, 1996.

his sisters pursuant to the Article of Agreement, which references their parents' wills. Gary's son Richard was subsequently appointed the administrator of Gary's estate.

¶6.     In September 2022, Zoa Ann filed a claim against the estate for "1/4 ownership" of Lots 12 and 13, relying on the Article of Agreement. Richard filed a complaint for determination of heirs, which his brothers—Gary's other two sons—joined, claiming that title to Lots 11, 12, and 13 "vested indefeasibly in" Gary's three sons upon his death.

¶7.     The chancery court conducted a hearing on Zoa Ann's claim on July 12, 2023, and she was the only witness to testify on behalf of the parties. Zoa Ann testified that "on [Shirley's] death bed about two or three weeks before she passed away, Gary brought the land people in and [Shirley] signed" the warranty deed conveying Lots 11, 12, and 13 to Gary. But she further testified that "Gary . . . said that he wasn't trying to take anything away from us. He was just trying to protect the land. So he made this contract with [Zoa Ann and her sisters]," i.e., the Article of Agreement. Zoa Ann testified that she witnessed Gary sign the Article of Agreement in the presence of a notary public and then gave her the original document to keep. Zoa Ann stated that "[Gary] didn't pay for Lot No. 11" and that the Article of Agreement mistakenly stated that he paid for it. She further testified that she and her sister "Valerie paid the property [taxes] for two years before [Gary] moved there" and that she had paid to get the property out of foreclosure twice. Finally, she testified that she believed that Gary executed the Article of Agreement because he wanted to honor his parents and his sisters and that his sons "knew their whole lives" about Gary's intentions.

4

¶8. Following the hearing, the trial court found that the Article of Agreement was not a sufficient foundation for the basis of a claim against the estate" and further found that:

> It is, at best, some kind of attempt to discuss these three lots, but [it] does not have sufficient clarity, even with the assistance of [Zoa Ann's] testimony, to convey a present interest in land, as if it were a deed. It is, as a contract, ambiguous. And I suppose that it is signed and notarized. It is signed and notarized, so it may fit the formal notion of what a claim against the estate should contain, but I'm doubtful of that. And so I cannot, based on what I have before me, say with certainty, and therefore, I don't think it was proven to the extent required by law to be either a deed or a contract with sufficient clarity to convey a present interest or to come within the caselaw or the statutes that I can identify in Mississippi.

¶9. On appeal, the Court of Appeals found that Gary's Article of Agreement "communicate[d] 'a dominant intention' that his sisters would each receive a one-quarter interest in the property upon his death" and was a valid conveyance of a vested future interest in the subject property rather than an ineffective testamentary gift. *Manners v. Est. of Johnson (In re Est. of Johnson)*, 412 So. 3d 305, 310 (Miss. Ct. App. 2024). For those reasons, the Court of Appeals reversed the chancellor's judgment and remanded the case for further proceedings. *Id.* at 311. On writ of certiorari, this Court respectfully disagrees. As such, we vacate the Court of Appeals' decision, and we reinstate and affirm the trial court's judgment.

## STANDARD OF REVIEW

¶10. Our appellate courts apply an abuse-of-discretion standard when reviewing a chancellor's findings. *Christmas v. Christmas (In re Will of Beard)*, 334 So. 3d 1154, 1156 (Miss. 2022). We "will not disturb the factual findings of a chancellor unless such findings are manifestly wrong or clearly erroneous." *Haley v. Thomas (In re Est. of Thomas)*, 883

5

So. 2d 1173, 1176 (Miss. 2004) (internal quotation mark omitted) (quoting *Williams v. Tonguis (Est. of Dykes v. Est. of Williams)*, 864 So. 2d 926, 930 (Miss. 2003)). As such, we will affirm the chancellor's findings if substantial evidence exists in the record to support those findings. *Id.* (quoting *Est. of Dykes*, 864 So. 2d at 930). Finally, this Court reviews questions of law in such matters using a de novo standard. *Id.* (citing *Miss. Dep't of Transp. v. Johnson*, 873 So. 2d 108, 111 (Miss. 2004)).

## DISCUSSION

¶11. In her claim against Gary's estate, Zoa Ann first took the position that the document created a contractual obligation by Gary to convey a one-fourth interest in the property to each of his siblings. However, "[t]he elements of a contract are '(1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation.'" *Logan v. RedMed, LLC*, 377 So. 3d 956, 962 (Miss. 2024) (internal quotation marks omitted) (quoting *LAGB, Llc v. Total Merch. Servs., Inc.*, 284 So. 3d 720, 724 (Miss. 2019)). Gary was the only party that executed the Article of Agreement, and no consideration was mentioned or provided. Based on these two factors alone, it is clear that the Article of Agreement was a unilateral statement not creating a contractual obligation by Gary.

¶12. Next, we address the very narrow question of whether the Article of Agreement conveyed a present interest in the land, thus rendering it a valid deed. It is well settled that, in order for a writing to be recognized as a deed, it must specifically and unambiguously

6

convey a present interest upon delivery.  *Ford v. Hegwood*, 485 So. 2d 1044, 1047 (Miss.

1986).  But writings that are wholly ineffective until the death of the grantor are testamentary

in nature and are subject to the statute of wills.  *Coulter v. Carter*, 200 Miss. 135, 26 So. 2d

344, 345 (1946); *Cunningham v. Davis*, 62 Miss. 366, 368 (1884); *Simpson v. McGee*, 112

Miss. 344, 73 So. 55 (1916).

¶13.    This Court has generated two separate lines of cases dealing with the important

distinction between writings that create a present interest upon delivery and those that do not.

*Oaks v. Ball (Est. of Greer)*, 218 So. 3d 1136, 1138-39 (Miss. 2017) (citing *Ford*, 485 So.

2d at 1045). In *Ford*, this Court stated:

> Where an instrument, though in the form of a deed, contains its maker's
> provision that it makes no present conveyance of an interest in land or
> otherwise directs that the interest to be conveyed vests in the grantee only upon
> the death of the grantor, such an instrument is regarded as testamentary in
> nature and is enforceable only if made in compliance with our statute of wills.

*Ford*, 485 So. 2d at 1045 (citing *Tapley v. McManus*, 175 Miss. 849, 168 So. 51, 52 (1936));

*see also* *Peebles v. Rodgers*, 211 Miss. 8, 50 So. 2d 632, 634-35 (1951); *Palmer v. Riggs*,

197 Miss. 256, 19 So. 2d 807, 808 (1944); *Gaston v. Mitchell*, 192 Miss. 452, 4 So. 2d 892,

893 (1942); *Ates v. Ates*, 189 Miss. 226, 196 So. 243, 244-45 (1940); *Smith v. Buffington*,

176 Miss. 889, 170 So. 816, 817 (1936); *White v. Inman*, 212 Miss. 237, 54 So. 2d 375, 378

(1951).

¶14.    On the other hand, this Court has stated that:

> [W]here the instrument conveys a future interest in land which vests in the
> grantee effective upon delivery of the deed, though reserving in the grantor a
> life estate, the effect of which is to postpone only the grantee's right of
> possession or occupancy, the instrument is a deed in law subject to our law

7

appertaining thereto and may be effective notwithstanding failure to comply
with the statute of wills.

*Ford*, 485 So. 2d at 1045 (citing *Buchanan v. Buchanan*, 236 Miss. 751, 112 So. 2d 224, 226-27 (1959); *Tanner v. Foreman*, 212 Miss. 355, 54 So. 2d 483, 484 (1951)).

¶15.    But how does one know when an instrument effectively conveys a present interest in land?  In both lines of cases highlighted in *Ford*, this Court analyzed the plain language of the writing coupled with the intent of the grantor to determine whether a present interest was conveyed.  *Id.* at 1046.  Following the framework established by this  Court, it is evident that the present case fits within the *Tapley* line of cases, thus rendering the Article of Agreement testamentary in nature and subject to the statute of wills.

### Conveyance of a Present Interest

¶16.   In  *Buchanan*, 112 So. 2d at 227, this Court held that an instrument is testamentary when "it affirmatively and clearly appears from the language of the instrument itself, giving due consideration to all its provisions, that it was the intention of the person signing it that the instrument itself would have no effect until his death."  The operative language in *Buchanan* stated that:

> In consideration of $10.00 and other valuables, I Mrs. T. J. Buchanan, deceased, and grantee of F. P. Buchanan and Bessie Mae (Buchanan) McNeil, grantors, *I convey and warrant to I. E. Buchanan,* his heirs and assigns, all my right, title, interest and claim in and to:
>
> All personal property of any and every kind belonging to the estate of T. J. Buchanan, deceased, by heir and conveyance: also; *all my right, title, interest and claim in and to the lands belonging to the estate of T. J. Buchanan, deceased*, by right of heir and conveyance, to wit: . . .

8

> It is understood and agreed, that the said Mrs. T. J. Buchanan, *grantor shall have and hold all her right and title to above described property, so long as she shall live*, *but at her death* the said I.E. Buchanan, grantee, shall claim and hold all right and title, both in personal and real properties, constituting and being the estate of the siad Mrs. T. J. Buchanan, and T. J. Buchanan, Deceased.

*Id.* at 225-26 (emphasis added).

¶17. The writing in ***Buchanan***, which contained consideration, the express words of conveyance "convey and warrant," and an acknowledgment and recording, was challenged for lack of a present-interest conveyance. *Id.* at 225. In its analysis, the Court considered whether "the language of the instrument was such as to make it clear that the *grantor intended* that the instrument itself would not take effect until the grantor's death." *Id.* at 226 (citations omitted). The Court ultimately held that:

> We are of the opinion that there is nothing in the deed indicating on the part of the grantor that the instrument itself would not be effective until her death. Certainly, it is an inartfully drawn instrument, but *considering the instrument as a whole*, and reading it so as to harmonize all is provisions, we think the grantor intended to retain a life estate in the property, and that it was the enjoyment of the estate conveyed that was withheld from the grantee until the grantor's death.

*Id.* (emphasis added). To reach its conclusion, the Court relied heavily on the plain language of the document, coupled with the grantor's intent. *Id.* at 227.

¶18. Similarly, in ***Watts v. Watts***, 198 Miss. 246, 22 So. 2d 625, 625 n.1 (1945) (emphasis added), the Court considered the following language:

> In consideration of the sum of One ($1.00) Dollar, cash in hand paid, the receipt and sufficiency of which is hereby acknowledged, and the natural love and affection which I bear for my beloved grandson, Booster Watts, I, Ellen Watts, a widow, *do hereby convey and warrant* unto Booster Watts the

9

following described land situated in the Town of Raymond, Second District of Hinds County, Mississippi, and more particularly described as follows, to wit;

. . . .

It is the intention and purpose of this deed *to convey to the grantee* herein the same land formerly conveyed to the grantor herein by deed from Mrs. C. B. Gillespie, (now deceased), of date of April 17, 1909, and recorded in Book 82 at Page 504 of the records of land deeds in the office of the Chancery Clerk of the Second District of Hinds County, at Raymond, Mississippi, and all appurtenances thereto belonging.

*The Grantor specifically reserves unto herself a life estate in and to the above described property, the title to the same to be vested in fee simple in the said Booster Watts at the death of said Grantor herein.*

¶19. In its analysis, the **Watts** Court considered that the writing "describe[d] itself as a deed, and the purported maker acknowledged it as a deed. It was recorded as such in the deed records on the date of execution. It is in the words and form of a deed." **Id.** at 626. The Court further observed that "[t]he grantor specifically reserve[d] unto herself a life estate" and finally concluded that "[t]hese words are sufficient to pass immediate interest," thereby declaring the document a valid deed. **Id.**

¶20. Similarly, in **Tanner**, 54 So. 2d at 483 (emphasis added), this Court considered the following language:

In consideration of Two Thousand Dollars cash in hand paid the receipt whereof acknowledged we *convey and warrant* to W. W. Foreman the land described as . . . .

It is understood and agreed by and between the parties hereto, that the grantor, J. R. Foreman, herein, *reserves the right of possession free use and occupation of the above described land as long as he lives*, and upon the death of the said J. R. Foreman the said grantee, W. W. Foreman, to have possession and occupation of said land as well as the land herein above described situated in the County of Smith, State of Mississippi.

10

¶21.    The Court ultimately concluded that the instrument was a valid deed, finding its language to be plain and unambiguous. *Id.* at 484. The Court also found that "[t]he instrument was executed and acknowledged in the form of a deed and duly delivered and the consideration thereof paid, and by its plain terms immediately vested the title to the land in the grantee, subject only to the reservation of the right of possession of the grantor[.]" *Id.*

¶22.    Likewise, in ***Stubblefield v. Haywood***, 123 Miss. 480, 86 So. 295, 295 (1920) (emphasis added), the Court considered the following operative language:

> For and in consideration of the sum of one ($1.00) dollar, and the further consideration of the party of the second part moving upon the following described premises, and working said lands, and the further consideration of the party of the second part caring for and supporting the parties of the first part their natural lives, the receipt of which is hereby acknowledged, have bargained, granted, sold and conveyed and by these presents *to grant, bargain, sell and convey* to the party of the second part, his heirs and assigns, the remainder of the . . . described land[.]
>
> *It is the intention of the parties of the 1st part to retain title in said lands during their natural lives and upon the death of one, title passes to the other to be retained until death, and to convey said premises and land in fee simple to take effect at their deaths, to the party of the second part.*

¶23.    Here, the instrument contained consideration, express words of conveyance ("to grant, bargain, sell and convey"), and an express statement reserving a life estate ("It is the intention of the parties . . . to retain title in said lands during their natural lives . . . ."). *Id.* Additionally, the document was duly acknowledged, recorded and delivered to the grantee. *Id.* The Court found that "[w]hile the deed [was] inaptly drawn, . . . a careful consideration of *all its provisions* leads to the conclusion that it is a deed," and the Court further found it

11

clear "on the face of the deed, construing all of its provisions together, that the intention of the parties was to reserve a life estate[.]" *Id.* at 296 (emphasis added).

¶24.  In all of the cases above, the Court examined the writings and the form of the document as a whole in order to ascertain the intent of the grantor. The writings in each case were held out as a deed in words and form, as they each contained express words of conveyance and an express life estate reservation. Each writing was duly executed by the grantor, acknowledged as a deed, recorded, and delivered to the grantee. Additionally, in *Buchanan*, 112 So. 2d at 226, the phrase "so long as she shall live" is utilized for the life-estate reservation, and in *Watts*, 22 So. 2d at 626, the phrase "[t]he [g]rantor herein specifically reserves unto herself a life estate" was viewed as sufficient to create a life estate. The language in each writing plainly and unambiguously stated the grantor's intent and, accordingly, the Court found each instrument operative as a deed conveying a present interest.

### *Testamentary in Character*

¶25.  Conversely, in *Simpson*, 73 So. at 55 (internal quotation marks omitted), the Court examined an instrument, appearing in the form of a deed, which was signed, recorded, and simply contained the following phrase: "This to take effect only after the death of said Harriet Houston." The instrument lacked any statement of consideration or an express conveyance clause, and the Court ultimately held it clearly conveyed "the donor's intention that the instrument itself should not take effect, for any purpose, until after her death . . . [so] it must be held testamentary in character, and therefore not a deed." *Id.* (citations omitted).

12

¶26.   In *Coulter*, 26 So. 2d at 345, this Court declined to recognize a transfer because it did not create a present interest in the land. The document presented in *Coulter* contained the following language:

> For and in consideration of the sum of $1.00 cash in hand paid the receipt of which is hereby acknowledged, and the further consideration of love and affection we have for our daughter, we, J.J. Coulter and wife, Mrs. N. J. Coulter, do hereby *bargain, sell, convey and warranty* unto Eliza Coulter the following described lands situated in Jefferson Davis County, Mississippi, to-wit: . . . . It is understood between the parties hereto that the grantors are to have possession, control and occupancy of said lands during their natural life, and at their death the title to said lands shall vest in the said Eliza Coulter, *but not until the death of both grantors herein*, *does the title pass*.

*Id.* (emphasis added).

¶27.   The document in *Coulter* was signed, acknowledged, delivered, and recorded; it also contained specific words of conveyance and a consideration clause. *Id.* But the language clearly stated that title was *not* to pass until the death of both grantors. *Id.* For this reason, the *Coulter* Court declined to recognize the document as a valid deed. *Id.* The Court further explained that a document is considered testamentary in nature unless "the instrument [conveys] some estate of some kind effective upon delivery[,]" at which point it will be considered a deed. *Id.*

¶28.   Lastly, in *Cunningham*, 62 Miss. at 366-67 (emphasis added), the Court considered whether the following language should be operative as a deed:

> This deed of conveyance, made and entered into by and between John W. Reynolds . . . That for and in consideration of the love and affection I have for my wife, Sarah A. Reynolds, and also in consideration of the sum of four hundred dollars to me in hand paid, the receipt and sufficiency of which is hereby acknowledged, I have this day granted, bargained, and sold, and by these presents *do grant, bargain, sell, and convey* unto the said Sarah A.

13

Reynolds, her heirs and assigns, all my right, title and interest in and to the following-described tract of land . . . *that I reserve the right to alter, change, or entirely abolish this deed if I so desire during my life, and that I retain all of the said property during my life . . . and that this deed do not take effect until after my death . . . .*

¶29.  In ***Cunningham***, the document was presented in the form of a deed.  ***Id.***  It was duly executed by the grantor, acknowledged, recorded, and delivered to the grantee.  ***Id.***  It contained consideration and express words of conveyance. ***Id.*** at 368.  But it also contained a revocation clause in which the grantor reserved "the right to alter, change, or entirely abolish this deed if . . . so desire[d] during [his] life, . . . retain[ed] all of the said property during [his] life[,] . . . and [stated] that this deed [would] not take effect until after [his] death[.]" ***Id.*** at 367.  The Court found that "[i]f [the instrument] was not to have any operation or effect until the death of the maker[,] it could not be treated as a deed, although it was so named, and is in form a deed." ***Id.*** at 368.  The Court ultimately concluded that:

> The provision in these words, "And that this deed do not take effect until after my death," coupled with the direction that the object of the bounty of the maker of the instrument should pay all his debts and have only the remainder of his property, convinces us that *the paper was testamentary in its character*.

***Id.*** (emphasis added)

¶30.  In the ***Tapley*** line of cases, the Court determined that writings will be construed as testamentary unless some interest passes upon delivery. In ***Simpson***, ***Coulter***, and ***Cunningham*** some, but not all, of the writings contained consideration clauses and express words of conveyance.  For example, in ***Coulter***, 26 So. 2d at 345, the writing contained a consideration clause, express words of conveyance, and was recorded and delivered.  But the plain language of the instrument indicated that it would not be effective until death. ***Id.***  In

14

*Simpson*, 73 So. at 55, there was no consideration or express words of conveyance; however, there was a qualifying phrase making the instrument ineffective until after death. And, in *Cunningham*, 62 Miss. at 368, the instrument contained many elements of a deed that the *Buchanan* cases discussed—consideration, express words of conveyance, express life-estate reservations, recording, and delivery. But it also contained a revocation clause, making the instrument revocable during the grantor's lifetime. *Id.* at 367. The Court essentially found that this provision created a contingent estate and, therefore, held that no present interest was conveyed by the plain language of the instrument. *Id.* at 368. The Court, while taking the grantor's intent into consideration, required an active role by the grantor in the passing of a present interest. *Id.* It has been made clear by this Court that anything less will be deemed testamentary in nature.[3] We find *Cunningham* to be most similar to the present case.

### *The Article of Agreement Is Not a Deed.*

¶31. In the present case, the plain language of the Article of Agreement begins by providing a history on the property and an explanation of how Gary acquired the lots. The document mentioned his parents' intention regarding the property as expressed in their wills, neither of which were probated. Although the Article of Agreement was signed by Gary and delivered to Zoa Ann in accordance with Mississippi Code Section 89-1-3 (Rev. 2021), it was ambiguous as to the nature of any intended conveyance. The only words that could be construed as some type of conveyance are "upon sale or my death shall be shared[.]" When

---

[3] We recognize that the Mississippi Real Property Transfer-On-Death Act provides a means of passage of title at death other than by intestate succession or by will. *See* Miss. Code Ann. § 91-27-1 to -37 (Rev. 2021). But this statute is inapplicable to the present case because it applies to transfer-on-death deeds executed on or after July 1, 2020.

15

compared with other writings upheld by this Court as deeds, the Article of Agreement contained no consideration, no express words of conveyance in accordance with Mississippi Code Section 89-1-41 (Rev. 2021), and no express reservation of a life estate. Also, the document was never recorded. While none of these characteristics alone would invalidate an otherwise legally sufficient deed, the absence of all of these factors illustrates the ambiguous nature of the document and calls into question the maker's intent.

¶32. No other writings analyzed by the Court under the above-cited cases, even those held to be testamentary in nature, contain such ambiguous and non-deed language as this Article of Agreement. As in *Cunningham*, 62 Miss. at 368, the document before this Court today may appear *in form* to be a deed but not in character. The Article of Agreement has almost none of the characteristics of the deeds considered in the *Buchanan* cases. In fact, the Article of Agreement struggles to find common ground with the documents discussed in the *Tapley* cases.

¶33. Gary specifically titled the document "Article of Agreement" instead of a deed. In fact, he mentioned in the document itself that "[a]ll three lots are under separate warranty deeds." He was unquestionably familiar with the content and form of a deed, as he had previously ordered the preparation of the warranty deed for his mother conveying the same property to him. If Gary had intended to utilize a deed for an inter vivos conveyance to his siblings, he could have easily had a new deed prepared. Additionally, at trial, when asked why Gary did not simply have a new deed prepared for the conveyance to his siblings, Zoa Ann responded, "I don't know why he didn't do that."

16

¶34.    Further, Zoa Ann never recorded the Article of Agreement, nor did she pursue a claim to quiet title or other similar title suit available under our law to reform deeds.  Instead, she chose to file a claim against the estate as an ordinary creditor.  Gary's actions, as well as those of Zoa Ann, indicate that the family was aware of Gary's stated intentions regarding the land.  They were also aware that the Article of Agreement was not a deed. The question was never *what* he intended, but *when* he intended for the conveyance to take place.  The Article of Agreement was merely an expression of his plan for the succession of the property—one that he intended to transpire in the event of a sale or his death but not before.

¶35.    In both lines of cases discussed above, this Court clearly considered both the grantor's intentions and the plain language of the document as a whole when evaluating whether the writing was a deed.  Based on the plain language of the Article of Agreement coupled with Gary's intentions, it is evident that no present interest was conveyed.  At best, Gary created a contingent estate, which the ***Cunningham*** Court held to be testamentary in nature, and thus subject to the statute of frauds.  Therefore, the Article of Agreement is not operative as a deed.

¶36.    Based on the foregoing, we respectfully reverse the judgment of the Court of Appeals and reinstate and affirm the decision of the trial court.

¶37.    **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED, AND THE JUDGMENT OF THE CHANCERY COURT OF MARSHALL COUNTY IS REINSTATED AND AFFIRMED.**

**MAXWELL, ISHEE, GRIFFIS AND SULLIVAN, JJ., CONCUR. RANDOLPH, C.J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY MAXWELL, ISHEE, GRIFFIS, SULLIVAN AND BRANNING, JJ. COLEMAN, P.J.,**

**DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, P.J., AND CHAMBERLIN, J.**

**RANDOLPH, CHIEF JUSTICE, SPECIALLY CONCURRING:**

¶38.    Every point Justice Branning makes in her opinion is unassailably correct and consistent with this Court's precedent. Others could find that the document's lack of a present conveyance, alone, is dispositive. Deeds must actually transfer some property interest at the time of delivery. There are no words in this non-deed document that transfer a property interest whatsoever at the time of delivery.

¶39.    Mississippi requires that deeds contain a present conveyance, *i.e.*, a conveyance at the time of delivery.[4] "[I]n order to be a deed the instrument must convey some estate of some kind effective upon the delivery of the instrument[.]" ***Coulter v. Carter***, 200 Miss. 135, 26 So. 2d 344, 345 (1946). Nowhere in the plain language of this non-deed document is a present conveyance of a property interest. This is also supported by the testimony of the parties, who themselves *did not think the document was a deed*.

*The Plain Language*

¶40.    Where in the non-deed document is there a present-time conveyance of a property interest? It cannot be found within the four corners of the document.

¶41.    Actually, the plain language of the document not only fails to state a present conveyance of a property interest, but it affirmatively demonstrates that no such conveyance was intended. The fourth clause contains the phrase "[u]pon sale or my death shall be shared in accordance . . . ." This phrase is fatal to the dissent's argument in more than one way.

___

[4]For that matter, the law of every other state is consistent on this issue.

18

¶42. (1) "Upon sale" clearly states that Gary Johnson retained the ability to sell the land after he signed the document. Since Johnson retained the right to sell the land, there was no present conveyance of the land. Previously this Court has described reserving the right to sell the property as an illegal and void restraint. "We think that the provision added by the grantor, to-wit 'grantor or his successor reserve all rights of sale and management' is an illegal and void restraint upon alienation and repugnant to the granting clause of [a] deed." *Dukes v. Crumpton*, 233 Miss. 611, 103 So. 2d 385, 388 (1958) (noting that retaining the right to sell the land transferred renders the deed invalid). A person cannot retain the right to sell a property if they convey that property to another.

¶43. (2) "Shall" is further evidence of the absence of a present conveyance. The phrase "[u]pon sale or my death *shall* be shared . . ." is clear evidence of a future conveyance, not a future interest. "The terms 'shall' and 'will' denote future events, and rights that 'shall immediately be transferred' upon the occurrence of some future event are not actually transferred until the future event occurs." *Oaks v. Ball (Est. of Greer)*, 218 So. 3d 1136, 1139 (Miss. 2017). The use of shall indicates that no transfer occurred upon delivery of the non-deed document.

*The Petitioner's Testimony*

¶44. Manners did not believe that the land had been conveyed to her. Her sworn petition reads:

> The Deceased is contractually obligated to transfer the two tracts above to Zoa Ann Manners, Valerie Akins, Geraldine Deboar, as co-tenants pursuant to the

19

agreement [sic] last will and testament of the deceased's parents which are hereby attached as Exhibits C and D.[5]

The phrasing "[t]he Deceased is contractually obligated to transfer . . . " in the present tense is clearly an obligation *to* convey, not a completed conveyance of a remainder to Johnson's sisters while retaining a life estate for himself. If a person or estate is asked "to transfer" then, logically, they cannot have already been transferred. At the time of filing, Manners clearly did not believe or claim that the property had already been transferred to her.

¶45.     Manners also testified that the document was not a deed, contrary to the dissent. She was asked directly why they did the document *instead of a deed*.

> Attorney: Why wouldn't you just do a deed instead of doing this agreement?
>
> Manners: I don't know. I guess we were just younger and we were all kind of emotional. . . .
>
> . . . .
>
> Attorney: Well, that's what I'm getting at. If it was his intention to actually convey an interest in property to you, why didn't he just do a deed? Because he knew that was the best way to do it.
>
> Manners: I'm not sure why he didn't do that. I'm not sure why I didn't make him do it. I'm not sure why I didn't go and get me a lawyer and say, hey, let's just do it, you know. Let's go ahead and pay that $5,000 to a lawyer and let's just get this all set up legal.

She thought the document was a contract, not a deed. "He made this contract with us." She did not believe that the land had been conveyed to her by the document. She was correct because there was no present conveyance, thus the document fails as a valid deed.

---

[5] For the record, this request does not align with either the language of the Article of Agreement or the intent expressed in the wills of Shirley and Richard Flor.

¶46.   The Court is not asked to determine what Johnson hoped would happen but what, if anything, he legally accomplished in 2002 via the Article of Agreement. In our rural agrarian state, Mississippi law wisely requires precision in land conveyances. The learned chancellor saw no present intent to convey a property interest—and nothing in the record leads us to conclude differently. The learned chancellor considered the law and the facts before him and came to a correct decision:

> So I, even based on the testimony, do not understand [the document] to be a sufficient foundation for the basis of a claim against the estate. And I've reviewed the law that was given to me and I don't think [the document] is subject to a perfect interpretation. I have heard the parties say what it might be and have heard the cross-examination. It is, at best, some kind of attempt to discuss these three lots, but does not have sufficient clarity, even with the assistance of the testimony, to convey a present interest in land, as if it were a deed. It is, as a contract, ambiguous. And I suppose that it is signed and notarized. It is signed and notarized, so it may fit the formal notion of what a claim against the estate should contain, but I'm doubtful of that. And so I cannot, based on what I have before me, say with certainty, and, therefore, I don't think it was proven to the extent required by law to be either a deed or a contract with sufficient clarity to convey a present interest or to come within the caselaw or the statutes that I can identify in Mississippi.

¶47.   A reading of the record, focusing on the non-deed document, leads to the conclusion that the chancellor committed no error.

**MAXWELL, ISHEE, GRIFFIS, SULLIVAN AND BRANNING, JJ., JOIN THIS OPINION.**

**COLEMAN, PRESIDING JUSTICE, DISSENTING:**

¶48.   "'A life estate is an interest in real property, the duration of which is limited by the life of some person.' Certainty of duration is irrelevant, and so long as the estate created 'can or may continue during a life, it is a freehold or life estate.'" *Whittington v. Whittington*,

21

608 So. 2d 1274, 1279 (Miss. 1992) (quoting 4 *Thompson on Real Property* § 1893 (1979)). The Article of Agreement at issue, although inartful, expressed a clear intent to create a life estate in conformance with the foregoing definition and was signed and delivered. Because the Article of Agreement met the requirements of a deed establishing a life estate with a remainder interest, the Court should treat it as such.

## DISCUSSION

### I. Whether the Article of Agreement was a valid deed.

¶49. Mississippi Code Section 89-1-1 provides as follows:

> Any interest in or claim to land may be conveyed to vest immediately *or in the future*, by writing signed and delivered; and such writing shall have the effect to transfer, according to its terms, the title of the person signing and delivering it, with all its incidents, as fully and perfectly as if it were transferred by feoffment with livery of seizin, notwithstanding there may be an adverse possession thereof.

Miss. Code Ann. § 89-1-1 (Rev. 2021) (emphasis added). Accordingly, a deed must first be in writing and signed.

¶50. In *White v. White (In re Est. of White)*, 234 So. 3d 1210 (Miss. 2017), the Court wrote as follows:

> An instrument of conveyance
>
> > will be construed to effectuate the manifest intention and purpose of the parties although it is inartificially and untechnically drawn. Technical terms, however, need not be used; and if an intention to pass a title is disclosed, the court will give effect to such intention notwithstanding inaccuracy of expression, or inaptness of the words used.

22

***White v. White (In re Est. of White)***, 234 So. 3d 1210, 1213 (¶ 7) (Miss. 2017) (quoting

***Allen v. Boykin***, 199 Miss. 417, 24 So. 2d 748, 749 (1946)). The instrument must also

contain enough information to identify the property conveyed so it can be located with

certainty. ***Id.*** at 1214 (¶ 10). A vague description can be clarified with parol evidence. ***Id.***

¶51. In ***Estate of White***, the Court held that the instrument was "a writing which was

signed, sealed, and delivered" and that it also evinced the grantor's "intent to transfer title

to 'all [partnership] property to [Tommy].'" ***Id.*** at 1213-14 (¶ 9) (alterations in original). It

therefore held that the instrument sufficiently transferred the property to the grantee. ***Id.*** at

1214 (¶ 13).

¶52. On Appeal, Zoa Ann Manners contends that the document signed by Gary Johnson

"conveyed a valid interest in the property as a deed or contract such that Zoa and her siblings

have an interest in the property in question." I agree.

¶53. The Estate contends in its brief that Gary's document did suffice as a present

conveyance of an interest in land. A valid deed must convey a present interest to the grantee.

***Oaks v. Ball (Est. of Greer)***, 218 So. 3d 1136, 1139 (¶ 10) (Miss. 2017). In determining

whether an instrument is a valid conveyance or invalid as testamentary, the ***Estate of Greer***

Court stated:

> In ***Ford v. Hegwood***, Justice Robertson, speaking for a unanimous Court,
> recognized that our precedent on this issue "is well settled in two
> complementary lines of cases." First, when the instrument "contains its
> maker's provision that it makes no present conveyance of an interest in land
> or otherwise directs that the interest to be conveyed vests in the grantee only
> upon the death of the grantor, such an instrument is regarded as testamentary
> in character and is enforceable only if made in compliance with our statute of
> wills." Second, "where the instrument conveys a future interest in land which

23

vests in the grantee effective upon delivery of the deed, though reserving in the grantor a life estate, the effect of which is to postpone only the grantee's right of possession or occupancy, the instrument is a deed in law subject to our law appertaining thereto and may be effective notwithstanding failure to comply with the statute of wills."

*Est. of Greer*, 218 So. 3d at 1138-39 (¶ 9) (footnotes omitted) (citations omitted) (quoting *Ford v. Hegwood*, 485 So. 2d 1044, 1045 (Miss. 1986)). Thus, the distinction rested on "whether the instrument conveys any present interest to the grantee." *Id.* at 1139 (¶ 10) (citing *Peebles v. Rodgers*, 211 Miss. 8, 50 So. 2d 632, 634 (1951)). It noted that it did not matter whether "some additional interest may vest on the grantor's death." *Id.*

¶54. The *Estate of Greer* Court ultimately held that the lease provision, which stated that "upon the lessor's death, the lessor's rights[,] primarily the right to receive lease payments[,] would be transferred to the lessor's daughter[,]" was testamentary since the lessor's daughter was not a party to the lease. *Id.* at 1137 (¶ 1). It clarified, however, that had the lessor's daughter been a party to the contract, the case would have been "analogous to those involving life estates and remainder interests." *Id.* at 1139 (¶ 12). The case *sub judice* is distinguishable since Zoa Ann and her sisters were parties to the Article of Agreement.

¶55. Importantly, the *Estate of Greer* Court noted that our Court has held that deeds are not testamentary when "the grantor retains a life estate and conveys the remainder interest to the grantee." *Id.* at 1139 (¶ 10) (citing *Tanner v. Foreman*, 212 Miss. 355, 54 So. 2d 483, 484 (1951)). Such is the case even when "the grantee's possessory interest will not vest until the grantor's death because the grantee's legal interest vests at the moment of conveyance." *Id.* To be sure, when the grantor employs language that "is consistent with an intention to

24

postpone the enjoyment of the interest conveyed or to vest the interest at a future date upon the happening of some event, the courts should not construe the instrument as testamentary in character and inoperative as a deed of conveyance." ***Buchanan v. Buchanan***, 236 Miss. 751, 112 So. 2d 224, 227 (1959).

¶56.    For example, our Court has held an instrument to be a deed when "it provided that it was the grantors' intention to 'retain title' in said lands during their natural li[fe]" and when "the deed provided that 'the title to the above land does not pass to [the grantee] until [the grantor's] death.'" ***Id.*** at 226 (quoting ***Stubblefield v. Haywood***, 123 Miss. 480, 86 So. 295 (1920); ***Hald v. Pearson***, 197 Miss. 410, 20 So. 2d 71 (1944)).

¶57.    Conversely, in cases in which an instrument was declared testamentary in character and inoperative as a deed, the language of the instrument made "clear that the grantor intended that the *instrument itself* would not take effect until the grantor's death." ***Id.*** at 226 (emphasis added) (citing ***Cunningham v. Davis***, 62 Miss. 366 (1884); ***Simpson v. McGee***, 112 Miss. 344, 73 So. 55 (1916); ***Martin v. Graham***, 114 Miss. 653, 75 So. 447 (1917); ***Kelly v. Covington***, 119 Miss. 658, 81 So. 485 (1919); ***Cox v. Reed***, 113 Miss. 488, 74 So. 330 (1917); ***Knight v. Knight***, 133 Miss. 74, 97 So. 481 (1923); ***Tapley v. McManus***, 175 Miss. 849, 168 So. 51 (1936); ***Ates v. Ates***, 189 Miss. 226, 196 So. 243 (1940); ***Gaston v. Mitchell***, 192 Miss. 452, 4 So. 2d 892 (1941); ***Mims v. Williams***, 192 Miss. 866, 7 So. 2d 822 (1942)).

¶58.    Here, the relevant portion of Gary's Article of Agreement provides: "Lots no 12, 13 Although in my name was not and is not for my benefit alone[.]  Upon sale or my death shall

25

be shared in accordance with my father Richard S Flor and mother Shirley R Flor's last will and testament." The language Gary employed in the Article of Agreement certainly demonstrated Gary's intention to postpone Zoa Ann's enjoyment of the interest conveyed or that her interest would vest upon his death. *Id.*, at 227.

¶59. However, although the Article of Agreement did not convey to Zoa Ann a possessory interest until Gary's death, it was not testamentary in character because Zoa Ann's *legal interest* in Lots 12 and 13 *vested at the moment of conveyance*. ***Est. of Greer***, 218 So. 3d at 1138 (¶ 10) (emphasis added). Specifically, Gary permissibly retained a life estate and conveyed a remainder interest to Zoa Ann. *Id.* at 1139 (¶ 10) (citing ***Tanner***, 54 So. 2d at 484). As such, the Article of Agreement follows the second line of cases contemplated by the ***Ford*** Court, in which "the instrument conveys a future interest in land which vests in the grantee effective upon delivery of the deed, though reserving in the grantor a life estate, the effect of which is to postpone only the grantee's right of possession or occupancy . . . ." ***Est. of Greer***, 218 So. 3d at 1138-39 (¶ 9) (internal quotation mark omitted) (quoting ***Ford***, 485 So. 2d at 1045).

¶60. Further, the Article of Agreement is comparable to instruments held to be valid deeds. (i.e., "Upon sale or my death shall be shared in accordance . . ." versus "the title to the above land does not pass to [the grantee] until [the grantor's] death."). ***Buchanan***, 112 So. 2d at 226 (internal quotation marks omitted) (quoting ***Hald***, 20 So. 2d 71). The language Gary furnished in the Article of Agreement does not demonstrate an intention that the Article of

Agreement itself would not take effect until his death, which would, indeed, render it testamentary in character and inoperable as a deed. *Id.*

¶61.   In his special concurrence, the Chief Justice contends that Gary's use of the word "shall" in the Article of Agreement indicates a future event rather than a present conveyance. The mandatory nature of the word "shall" is well-settled in the realm of statutory construction. *Pitalo v. GPHC-GP, Inc.*, 933 So. 2d 927, 929 (¶ 5) (Miss. 2006) (internal quotation marks omitted) (quoting *Franklin v. Franklin ex rel. Phillips*, 858 So. 2d 110, 114 (Miss. 2003)).   The Court has not reached the conclusion that shall connotes a mandatory requirement under some laborious and mysterious reason shrouded in the legal mists; rather, we have reached the conclusion because when courts interpret statutes, we rely on the plain meaning of the words.  The plain meaning of the word shall necessarily implies a mandatory, required act, and there is no reason to give it any different an interpretation when Gary used it.  As for the Chief Justice's complaint that the word connotes something that will happen in the future, I can only point out that mandating that something happen in the future is, as set out above, exactly what creating a remainder interest in a life estate does.  When the holder of a life estate dies, the remainder interest will, must, or, indeed, shall pass to the holder of the remainder interest.  It is impossible to create a life estate otherwise.

¶62.   The Estate and the majority cite *Coulter v. Carter*, 200 Miss. 135, 26 So. 2d 344 (1936), to support the opposite conclusion.  The language from the instrument at issue there read as follows:

> For and in consideration of the sum of $1.00 cash in hand paid the receipt of which is hereby acknowledged, and the further consideration of love and

affection we have for our daughter, We, J. J. Coulter and wife, Mrs. N. J. Coulter, do hereby bargain, sell, convey and warranty unto Eliza Coulter the following described lands situated in Jefferson Davis County, Mississippi, to-wit: SE ¼ of the SE ¼ less 10 acres in the NE corner and 2 ½ acres on the North side and the SW ¼ of the SE ¼ Section 20, Tp. 9 R 18 and the N ½ of the NE ¼ less 5 acres Sec. 29, Tp. 9 Range 18 containing 142 ½ acres more or less. It is understood between the parties hereto that the grantors are to have the possession, control and occupancy of said lands during their natural life, and at their death the title to said lands shall vest in the said Eliza Coulter, but not until the death of both grantors herein, does the title pass.

*Id.* at 345. The ***Coulter*** Court acknowledged the above-described principle that

The fundamental difference between a deed and a will is that in order to be a deed the instrument must convey some estate of some kind effective upon the delivery of the instrument, whereas if no title of any kind is to pass until the death of the grantor or grantors, the instrument is testamentary in character and must be authenticated and probated as a will, else it will be inoperative.

*Id.* However, the ***Coulter*** Court declined to offer any further explanation of its holding or any explanation of how it viewed the specific language to lead to the conclusion that the document at issue itself only operated upon the death of the grantor. The ***Coulter*** Court certainly did not discuss whether the instrument functioned to retain a life estate and convey the remainder interest. Presumably, the Court focused on the restriction that title would not pass until the death of the grantor, but no equivalent language is found in the Article of Agreement here.

¶63. Finally, I disagree with the Chief Justice's conclusion regarding Gary's writing that the property would go to his sisters upon the sale of the land. The language does not indicate that Gary retained the right to sell the land because, according to it, if he sold the land, it must be shared just as it would be at his death. It was not a reservation of a right but, rather, the forfeiting of the right he otherwise would have had to benefit from the sale of the

28

property. Mississippi law allowed Gary to convey his rights to any proceeds from the sale of the land as surely as it allowed him to convey a remainder interest and retain a life estate for himself.

> As a general rule, a valid and unqualified assignment operates to transfer to the assignee all the right, title, or interest of the assignor in the thing assigned, but not to confer upon the assignee any greater right or interest than that possessed by the assignor. It passes the whole right of the assignor, nothing remaining in him capable of being assigned, and the assignor has no further interest in the subject matter of the assignment.

*Int'l Harvester Co. v. Peoples Bank & Tr. Co.*, 402 So. 2d 856, 861 (Miss. 1981) (quoting 6A C.J.S. *Assignments* § 73).

¶64. Once more, "'A life estate is an interest in real property, the duration of which is limited by the life of some person.' Certainty of duration is irrelevant, and so long as the estate created 'can or may continue during a life, it is a freehold or life estate.'" *Whittington*, 608 So. 2d at 1279 (quoting 4 *Thompson on Real Property* § 1893 (1979)). In the Article of Agreement, Gary conveyed a life estate to himself with the remainder to his sisters. No language in the Article of Agreement indicates that the document itself would only take effect upon his death. Accordingly, and with respect, I dissent.

**KING, P.J., AND CHAMBERLIN, J., JOIN THIS OPINION.**

29